IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA C. TURKOVICH, | ) | CASE NO. 5:06 CV 1755 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

**Introduction**

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Linda C. Turkovich, for disability insurance benefits and supplemental security income.   The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Turkovich had severe impairments consisting of depression, a bipolar disorder, and a history of back pain with history of cervical strain.[1]  The ALJ made the following finding regarding Turkovich's residual functional capacity:

> [L]ight work, no prolonged or rapid rotation of cervical region.  Furthermore, the claimant's ability to work is limited to simple and unskilled work activity with minimal contact with the public and co-workers.[2]

---

[1] Transcript ("Tr.") at 25.

[2] *Id.*

Given that residual functional capacity, the ALJ determined that Turkovich was incapable of performing her past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth a residual functional capacity similar but not identical to the finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Turkovich could perform.[4]  The ALJ, therefore, found Turkovich not under a disability.[5]

Turkovich asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, Turkovich argues that substantial evidence does not support the ALJ's finding that she could perform a significant number of jobs in the national economy given her residual functional capacity.  Further, she maintains that substantial evidence does not support the ALJ's credibility finding.

## Analysis

As fully discussed hereafter, two of the ALJ's findings are problematic.  First, the residual functional capacity finding is deficient because the ALJ has not explained how the

---

[3] *Id.*

[4] *Id.* at 26.  The residual functional capacity finding provided for "no prolonged or rapid rotation of the cervical region" (Tr. at 25).  The hypothetical posed to the vocational expert provided for no "prolonged or a repetitive rotation, flexion, or hyper-extension of the neck" (Tr. at 352).

[5] *Id.*

various moderate mental impairments diagnosed by the consulting psychologist and the state agency reviewing psychologist translate into the limited nonexertional limitation of "simple and unskilled work with minimal contact with the public and co-workers."[6]  Second, the vocational expert's testimony is ambiguous and confusing and does not support the finding that "there are a significant number of jobs in the national economy that she [Turkovich] could perform."[7]  The case, therefore, must be remanded for further proceedings.

1.      **The residual functional capacity finding and nonexertional, mental limitations**

Turkovich's treating psychiatrist diagnosed her as having major depressive disorder, moderate.[8]  The consulting psychologist, Robert Dallara, Ph.D., confirmed that diagnosis and assessed moderate impairments in her ability to relate to fellow workers and supervisors, difficulties with concentration, and moderate impairment in her ability to withstand stress and pressure associated with day-to-day work activities.[9]  The state examining psychologist rated Turkovich moderately impaired in six categories, including the ability to interact appropriately with the general public and supervisors and the ability to complete a normal workday in a workweek.[10]

---

[6] *Id.* at 25.

[7] *Id.* at 26.

[8] *Id.* at 192.

[9] *Id.* at 123.

[10] *Id.* at 125.

In spite of this clear, consistent record of mental impairments and limitations, the ALJ included only one nonexertional, mental limitation in the residual functional capacity finding – simple and unskilled work activity with minimal contact with the public and coworkers.[11] The ALJ provides no explanation as to how the limitations noted by the consulting psychologist and the state agency psychologist translate into this limitation.  The ALJ merely notes the diagnosis (but not the assessment) of the consulting psychologist[12] and makes no reference at all to the assessment of the state agency psychologist.

It may well be that the mental impairments documented by the consulting psychologist and the state examining psychologist properly translate into the limited mental, nonexertional limitation included in the residual functional capacity finding.  However, I cannot evaluate the ALJ's analysis on that point because his decision does not even acknowledge the assessments made by these professionals.  The ALJ has "failed to show his work."  The case must be remanded for articulation as to the ALJ's evaluation of these assessments and how those assessments factor into the ALJ's translation of impairments to limitations.[13]

2.     **The availability of a significant number of jobs in the national economy that Turkovich could perform**

At the hearing the ALJ posed a hypothetical to the vocational expert containing limitations similar, but not identical, to those incorporated into the residual functional capacity finding:

---

[11] *Id.* at 125.

[12] *Id.* at 19.

[13] This may affect the credibility finding, which should be reevaluated on remand.

Q    I want to ask you to assume a person of the same age, education, and vocational experience as the claimant who would require a residual functional capacity for a range of light unskilled work that did not involve a prolonged or a repetitive rotation, flexion or hyper-extension of the neck, and did not involve dealing with the public.  And only involved limited contact with co-workers.[14]

Following this hypothetical, the ALJ and the vocational expert had an exchange about security guard and surveillance monitor jobs at light and sedentary levels and the impact of the neck movement restrictions on the number of such jobs available.

A    I would think that there, the security guard and surveillance monitor. The U.S. Publishing quotes it at light with 78,595 nationally.  I wouldn't think one would be, the monitor could be lifting.  You wouldn't be flexing your neck, and there would be no public or co-workers with that.  Other than that –

Q    So the limitation, if there is a limitation on rotation and flexion of the neck, that eliminates a lot of positions?

A    It does.

Q    Is that also true at the sedentary level?

A    Well, again, there would be the security guard, surveillance monitor. It's sedentary at 70,736 nationally, and there are clerk jobs where, say if one is looking at a monitor for any reason for a computer, that can be lifted to accommodate that.  But I would still think one would be flexing and would be turning their head periodically, and one would be dealing with co-workers.  So that probably isn't going to hold.

Q    So if I understand your testimony.  If there is a restriction on that rotation, flexion, and hyper-extension of the neck that is a rather restrictive or severe vocational factor, correct?

A    Yes.  It is.

---

[14] *Id.* at 351-52.

Q     It erodes a great portion of the occupational base at sedentary and light levels?

A     Yes.  It does.[15]

This exchange is confusing and leaves uncertain the number of jobs available after discounting for the neck movement restrictions.  The vocational expert testified that there are 78,595 security guard and surveillance monitor jobs available nationally at the light level and 70,736 such jobs available nationally at the sedentary level.[16]  He further testified, however, that restrictions on rotation, flexion, and hyper-extension of the neck are restrictive or severe vocational factors that erode a great portion of the occupational base at both the sedentary and light levels.[17]  He did not state how many jobs would be left after this erosion.  This testimony does not support a finding of no disability at step five.

Admittedly, the residual functional capacity finding does not incorporate the identical restrictions on neck movement used in the hypothetical.  The finding states, "no prolonged or rapid rotation of the cervical region;"[18] whereas the hypothetical provides for no "prolonged or a repetitive rotation, flexion or hyper-extension of the neck."[19]  If there is no difference, then the vocational expert's open-ended testimony as to erosion of the occupational base is fatal to both.  If there is a difference, then the transcript contains no

---

[15] *Id.* at 351-52.

[16] *Id.* at 352.

[17] *Id.* at 353.

[18] *Id.* at 25.

[19] *Id.* at 352.

articulation of the reason for that difference, and there is no vocational expert testimony opining on the number of jobs available under the "different" residual functional capacity finding.

Since this case is being remanded, I direct that the ALJ should have the vocational expert offer an opinion as to the number of jobs available statewide, regionally, or locally. Counsel have filed supplemental briefs as to whether a vocational expert's testimony will suffice if it merely refers to the number of jobs available nationally.[20] Although testimony as to the jobs available nationally may, without more, suffice under some circumstances, it is certainly preferable to have testimony as to jobs available statewide, regionally, or locally.

## Conclusion

Based on the foregoing, I hereby reverse the decision of the Commissioner denying Turkovich's applications for disability insurance benefits and supplemental security income and remand the case (1) for reconsideration of the residual functional capacity finding with proper analysis and articulation as to the assessments of the consulting, examining psychologist and the state agency reviewing psychologist and (2) for reconsideration of the finding that a significant number of jobs exist nationally (and statewide, regionally, or locally) that Turkovich could perform with the assistance of a vocational expert.

IT IS SO ORDERED.

Dated:  March 21, 2008                     s/ William H. Baughman, Jr.
                                           United States Magistrate Judge

---

[20] ECF # 19 (Turkovich) and 20 (the Commissioner).